DEGILL CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1996–73. Filed June 10, 1974.

*Solomon Fisher* and *John R. Latourette, Jr.,* for the petitioner.
*Paul J. Sude,* for the respondent.

DAWSON, *Judge:* Respondent determined the following Federal income tax deficiencies and additions to tax against the petitioner:

| Tax year ended | Deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6653(b) [1] | Sec. 6651(a) |
| Apr. 30, 1967 | $200,360.13 | $122,827.91 | ($5,198.00) |
| Apr. 30, 1968 | 44,777.20 | 32,343.40 | |
| Apr. 30, 1969 | 22,678.74 | 11,339.37 | |

On May 22, 1973, respondent filed a motion to dismiss this case for lack of jurisdiction on the ground that the petition was not timely filed within 90 days after the notice of deficiency was mailed. On November 23, 1973, the petitioner filed its objections to respondent's motion, claiming that it had 150 days within which to file its petition, and also filed its own motion to dismiss for lack of jurisdiction on the ground that respondent did not mail his notice of deficiency to petitioner's last known address.

A hearing was held in Washington, D.C., on January 9, 1974, on both motions to dismiss. The disposition of these motions is the subject of this opinion.

We are confronted with two key questions: (1) Was the notice of deficiency mailed to petitioner's "last known address" within the intendment of section 6212(b)? (2) was the petitioner a "person outside the States of the Union and the District of Columbia" within the purview of section 6213(a), when respondent mailed the notice of deficiency, so that it had 150 days within which to file its petition in this proceeding? Alternatively, if we should conclude that the 90-day period for filing the petition is applicable, petitioner asks us to consider (a) whether the 90-day period started to run when the notice of deficiency was received by the petitioner on or about December 27, 1972, and (b) whether the Treasury regulation promulgated under section 7502 allowing a postmark date to establish the timely filing of a petition is arbitrary and unreasonable insofar as it denies recognition to foreign postmarks.

#### FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation of facts and attached exhibits are incorporated herein by this reference.

At the time its petition was filed and during the years in issue, Degill Corp. (herein called petitioner) was a Pennsylvania corporation which conducted all its business operations in the South Pacific, including South Vietnam, Singapore, and the Philippines. It maintained a "registered office" at the address of its accountants, as follows:

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

c/o Goldenberg, Rosenthal Company
Room 820, 12 S. 12th Street
Philadelphia, Pennsylvania 19107

Petitioner conducted its construction and leasing business first in South Vietnam until January 1969, then in Singapore until December 1973, and thereafter moved all its operations to the Philippines. In December 1972, petitioner was using Singapore as its mailing address, while also using stationery in its business which showed the Philadelphia address of its accountants as its corporate address.

Respondent was aware both before and when he issued the notice of deficiency that all of the petitioner's officers, books, records, and equipment were located at its offices in the South Pacific. In August 1970, respondent conducted, through his Office of International Operations, an investigation of petitioner's Federal tax returns, contacting its officers in Singapore and the Philippines to examine its corporate records there. In addition, respondent knew through various interviews, correspondence, and other communications with petitioner's accountant in Philadelphia that its entire business operations were conducted in the South Pacific.

All of petitioner's tax returns filed during the years in issue, and in years thereafter, show the corporate address to be that of its accountants in Philadelphia. These tax returns were prepared in Philadelphia by Mr. Rosenthal, who was not an employee of petitioner and only corresponded with petitioner by mail. He has never had a power of attorney to represent petitioner in the United States.

On or about April 20, 1970, Mr. Rosenthal mailed respondent a letter, attached to an Employer's Quarterly Federal Tax Return (Form 941), indicating that petitioner's address was changed from South Vietnam to Singapore. Respondent does not change a taxpayer's address on his Service Center records unless so authorized by an officer of the corporation or other representative, and did not thereafter alter petitioner's Philadelphia corporate address in its files. Except for Mr. Rosenthal's letter, no authorization from any officer or stockholder of petitioner was ever provided respondent by the corporation to change its Pennsylvania address during the years in issue and up to the time respondent issued his notice of deficiency.

In July 1970 and in July 1972, Mr. Rosenthal filed applications with respondent for automatic extensions of time within which to file one of petitioner's Federal income tax returns and in both instances listed the Philadelphia address as its corporate address. In March 1971, a claim for refund was filed with respondent signed by petitioner's president listing the Philadelphia address as the corporate address. And finally in May 1972, Mr. Rosenthal again mailed a Form 941 to respondent using the Philadelphia address as the corporate address.

Respondent sent a notice of deficiency to petitioner on December 12, 1972, by certified mail at the Philadelphia address. He also sent a conformed copy by regular mail the same day to petitioner at its Singapore business address.

The original notice of deficiency was received at Mr. Rosenthal's office in Philadelphia on December 13, 1972, and was thereafter forwarded to the Philippines and received there on December 29, 1972. The conformed copy of the notice reached Singapore sometime between December 18 and December 27, 1972. Mail from the eastern part of the United States reaches a designated address in Singapore in 5 to 6 days, and a designated address in the Philippines in 6 to 7 days.

On March 10, 1973, petitioner sent by registered mail from the Philippines its petition for filing with this Court. The envelope which contained the petition bears a March 10, 1973, registry date of the Makati Commercial Center, Philippines, as well as two other postal stamps indicating it was received in the Washington, D.C., Registry Division of the United States Post Office on Friday, March 16, 1973, and in the Ben Franklin Branch, United States Post Office, on Monday, March 19, 1973. It was also received by this Court on March 19, 1973. The March 10, 1973, Philippines postmark is the only postmark within the 90-day period commencing when respondent mailed the notice of deficiency. All three postmarks fall within 150 days after the notice was sent to the petitioner.

OPINION

1. *Validity of deficiency notice—last known address.*—We must first decide whether respondent mailed the notice of deficiency to petitioner's "last known address" within the intendment of section 6212(b)(1). Petitioner raised this issue in its cross-motion to dismiss for lack of jurisdiction.

The statute is intended to give a taxpayer notice of respondent's deficiency determination in order that the jurisdiction of this Court may be invoked without the prior payment of the tax. A taxpayer's last known address must be determined by a consideration of all relevant circumstances. It is the address which, in the light of such circumstances, the respondent reasonably believes the taxpayer wishes to have the respondent use in sending mail to him. *Daniel Lifter,* 59 T.C. 818, 821 (1973), and cases cited therein.

We conclude on the facts of this case that the respondent had reason for mailing the notice of deficiency to petitioner at its registered office in Philadelphia and sending a conformed copy to its Singapore address. Both of these notices were promptly received at the addresses to which they were sent. The purposes of section 6212 have been accomplished because the petitioner received actual notice of the

deficiencies before the running of the statute of limitations and within sufficient time to prepare and file a petition with this Court. *Daniel Lifter, supra* at 824.

Although petitioner operated in three different South Pacific locations between 1969 and 1973, all of its tax returns were filed with respondent during this period by Mr. Rosenthal and each showed the Philadelphia address. In addition, other documents sent to respondent on behalf of petitioner, including requests in 1970 and 1972 for extensions of time in which to file Federal income tax returns and a claim in 1971 for a refund, all used the Philadelphia address as petitioner's corporate address. This continuous reference to Philadelphia as the corporate address for tax matters persuades us that petitioner wanted respondent to send all mail regarding its tax matters to its Philadelphia address, which was admittedly more constant and certain than petitioner's changing South Pacific addresses during such period. Since its accountant, Mr. Rosenthal, prepared all its tax returns in Philadelphia, it was not unreasonable for respondent to conclude that all tax matters be directed to petitioner through its Philadelphia address.

Except for a single request by Mr. Rosenthal for a change of address to Singapore attached to an Employer's Quarterly Federal Tax Return (Form 941), no other written or verbal authorization for change of the corporate address was ever received by respondent. The change request appears to have been made to speed up delivery of quarterly Forms 941 to petitioner in Singapore so that the returns could be timely filed each quarter without penalties. Even after this request was made, all subsequently filed tax returns showed petitioner's corporate address to be the Philadelphia address.

The letter dated May 31, 1972, cannot be considered as having notice consequence to respondent for purposes of the last known address. While it advised the Service Center that petitioner operates in Saigon, Singapore, and Manila, it did not indicate any address for the petitioner other than the Philadelphia address which it had been using on its tax returns. The Form 941 which it accompanied in fact indicated the Philadelphia address. The rule is well established that a taxpayer who asserts that a notice of deficiency was not mailed to him at his last known address must show that he filed a "clear and concise notification concerning a definite change of address." *Harvey L. Mc-Cormick*, 55 T.C. 138, 141 (1970); *Langdon P. Marvin, Jr.*, 40 T.C. 982 (1963). We agree with the respondent that a letter which merely advises that a taxpayer has business operations in Saigon, Singapore, and Manila is not a clear and concise notification concerning a definite change of address.

We find that respondent acted reasonably in responding to petitioner's continuous pattern of using the Philadelphia address on all corporate tax returns and on many other documents regarding its tax matters up to December 12, 1972, when respondent mailed the certified notice of deficiency to that address. See and compare *Berger* v. *Commissioner*, 404 F. 2d 668 (C.A. 3, 1968), affirming 48 T.C. 848 (1967), certiorari denied 395 U.S. 905 (1969); *Delman* v. *Commissioner*, 384 F. 2d 929 (C.A. 3, 1967), affirming a Memorandum Opinion of this Court, certiorari denied 390 U.S. 952 (1968). There is no cause for us to declare the deficiency notice invalid as not having been mailed to the last known address.[2] Accordingly, the petitioner's motion to dismiss for lack of jurisdiction will be denied.

2. *Qualification for 150-day filing period.*—Next we must decide whether the petitioner filed a timely petition herein, and this depends upon whether the 90-day or 150-day rule applies.

Section 6213(a) provides that a taxpayer ordinarily has 90 days after mailing the deficiency notice within which to file a petition with this Court. The time is extended to 150 days if the "notice is addressed to a person outside the States of the Union and the District of Columbia."

The 150-day filing rule was adopted in 1942 to correct a hardship created where a taxpayer was in remote places and experienced delays in transporting mail during the then-existing hostilities. Even after the hostilities ceased, the 150-day filing period was preserved and continued to assist those taxpayers who reside and conduct their business and professional activities in any territories, insular possessions, or foreign countries "outside the United States." See *Rebecca S. Hamilton*, 13 T.C. 747 (1949), and the legislative history discussed therein.

There is justification for allowing 150 days to file a petition with this Court where a "person" is absent from the United States and receipt of a deficiency notice is likely to be delayed because he is not physically present at the address to which the notice was sent in the United States. See *Mindell* v. *Commissioner*, 200 F. 2d 38 (C.A. 2, 1952); *Estate of William Krueger*, 33 T.C. 667 (1960). Thus we are not precluded from holding that petitioner had 150 days to file its petition in this proceeding even though the notice of deficiency was mailed to its accountant's address in Philadelphia. The crux of the issue is whether in these particular circumstances a domestic corporation can qualify as a "person" outside the United States so that the

---

[2] We note the parties have stipulated that the statute of limitations on assessment for years in issue has been extended to Dec. 31, 1974. Thus, if the deficiency notice was not sent to petitioner's last known address, there is still sufficient time for respondent to send a new notice of deficiency.

150-day filing rule applies. The word "person" is not defined in section 6213(a), the regulations thereunder or the legislative history.

Respondent, pressing for a restrictive construction of section 6213 (a), contends that the 150-day rule should be applied only to "people" or "individuals" who are physically outside the United States when the notice of deficiency is mailed, and not to any domestic corporation which is a domiciliary of the United States because a corporation does not have an actual location separate and apart from its domicile. He argues that petitioner, a Pennsylvania corporation, is an artificial person legally created and taking its rights, privileges, burdens, and obligations from the sovereign through which it derives life. Thus, respondent asserts, petitioner can act through its officers or agents, sue and be sued, take and hold property, contract in its own name while still existing independently of the individuals who comprise it, and may solicit and conduct its business. Though a corporation may establish a "presence" somewhere else by expanding the territorial scope of its business operations, respondent points to the fact that such expansion is only with the permission of the sovereign that gives it life and that the "registered office" of a corporation should not be considered a mere technicality since it represents the actuality of the artificial person's existence in a State. Having chosen to operate as a domestic corporation, respondent says that the petitioner should only have available to it the same 90-day filing period which is available to any other domestic corporation, regardless of the location of its officers and principal place of business elsewhere. Respondent relies on *Mianus Realty Co.*, 50 T.C. 418 (1968), where the only officer authorized to act for a domestic corporation was outside the United States when the notice of deficiency was mailed and the 90-day period was held applicable.

To the contrary, petitioner claims it is entitled to the 150-day filing rule because resident individual taxpayers normally receive the 150-day period so long as they are physically absent from the United States when the notice of deficiency is mailed. It argues that petitioner is clearly like an individual and is included, along with individuals, within the statutory definition of a "person" contained in section 7701(a)(1). Hence the petitioner urges us to hold that a domestic corporation is a "person" entitled to the 150-day rule when its entire business operations, employees, agents, officers, and majority stockholders are located outside the United States.

Petitioner points to congressional concern for protecting taxpayers, like petitioner, which conduct all their business and reside in foreign countries, by establishing for them a 150-day filing period to enhance their ability to adequately respond and litigate their cases in this Court.

Through section 6213(a) and its predecessors, Congress made available a 150-day filing period where delays in transmitting a petition to this Court and delays in receipt of an original notice of deficiency may be due solely to the foreign location of a taxpayer. We agree with petitioner that it would frustrate this clearly defined policy to deny it the benefit of the 150-day rule in these circumstances.

We think a corporation, foreign or domestic, may be considered a "person" for purposes of section 6213(a). The Federal income tax is based on a statutory scheme that separates taxpayers into various groups, including individuals and corporations, and taxes them differently. However, in certain instances both are grouped together, and under section 7701(a)(1), unless expressly excluded or manifestly incompatible with the intent of the Code, the term "person" *shall be construed* to mean and include *both* an individual and a corporation. When using the term "person" in section 6213(a), Congress did not expressly exclude corporations from its meaning. Nor, in our opinion, does inclusion of a corporation within the word "person" manifestly conflict with the overall intent of the Code. Consequently, we find that petitioner, even as a domestic corporation, is a "person" capable of being outside the United States.

As we see it, the crucial criterion to be gleaned from the decided cases is whether the "person" is physically located outside the United States so that the notice of deficiency mailed to its United States address will be delayed in reaching it in a foreign country, possession, or territory, and thereby hamper its ability to adequately respond by filing a petition to litigate its case in this Court. If, as here, the situs of corporate activity is entirely outside the United States, congressional concern for adequate response time for a taxpayer makes the 150-day rule applicable in such instances. Under the facts of this case it is clear that only a registered office was maintained by petitioner at the offices of its accountant in Philadelphia. All corporate business affairs were conducted in the South Pacific during the years in issue and on the date the notice of deficiency was mailed. We are convinced that the "registered office" alone should not be considered the physical location of petitioner's home office when its officers, books, records, majority stockholders, and entire equipment are located in either Singapore or the Philippines. Since the accountant in Philadelphia had no power of attorney to represent petitioner in the United States, the only home office for petitioner was outside the United States where its corporate affairs were handled on a day-to-day basis by its officers and employees. The only home office capable of responding to the deficiency notice was in the South Pacific.

We find that respondent's reliance on *Mianus Realty Co.*, 50 T.C. 418, is misplaced since the facts are clearly distinguishable. In *Mianus*

*Realty* this Court noted that where a corporation's home office is within the United States, it would be difficult to conceive that such a corporation was outside the United States. By contrast, it is apparent here that petitioner's home office was outside the United States at all relevant times.

In our opinion it is possible for a corporation to have a home office separate and apart from its domicile. Although it is true that a corporation derives life from the State in which it is incorporated, it can also travel outside that State and conduct business elsewhere. In fact, State law permits corporations to maintain only a registered office within its borders while conducting all business elsewhere. In view of the congressional emphasis on time to respond to a statutory notice of deficiency in this Court, the fact that a corporation can respond only through its home office persuades us that for purposes of section 6213 (a) even a domestic corporation can be outside the United States when a deficiency notice is mailed if its entire business operations are there. We do not mean to suggest that a temporary absence of officers from the United States home office of a domestic corporation requires the 150-day rule to apply. Cf. *Mianus Realty Co., supra.* That issue is not presently before the Court. Here we have a permanent absence from the United States which would have invoked the 150-day rule even under the former stricter rule of *Rebecca S. Hamilton,* 13 T.C. 747 (1949).

Accordingly, since the facts show that this domestic corporation was physically located abroad, we hold that the 150-day filing period applies. We reject the narrow reading of the statute urged by the respondent, and adopt a construction consistent with the congressional purpose which will permit us to "retain jurisdiction without doing violence to the statutory language." *Duane M. Traxler,* 61 T.C. 97, 100 (1973). Consequently, respondent's motion to dismiss for lack of jurisdiction will be denied.

In view of our disposition of this issue, we do not reach the alternative contentions raised by the petitioner.

*An appropriate order will be entered.*

